Albert A. Ciardi, III, Esquire
Thomas D. Bielli, Esquire
Jennifer E. Cranston, Esquire
Ciardi Ciardi & Astin
One Commerce Square
Suite 1930
Philadelphia, PA 19103
215 557 3550
215 557 3551 (fax)

UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | : |
| | : CHAPTER 11 |
| GELT FINANCIAL CORPORATION, | : |
| | : BANKRUPTCY NO. 11-15827 |
| DEBTOR. | : |
| | : |

## DEBTOR'S MOTION TO PERMIT A) USE OF CASH COLLATERAL; B) PROVIDE ADEQUATE PROTECTION TO PARTIES WITH INTEREST IN CASH COLLATERAL AND C) FOR AN EXPEDITED HEARING

Gelt Financial Corporation ("Debtor" or "Gelt") by and through its proposed counsel, Ciardi Ciardi & Astin, hereby requests A) Use of Cash Collateral; B) Authority to Provide Adequate Protection to Parties with Interest in Cash Collateral; and C) an Expedited Hearing, and in support thereof and respectfully represents:

1. A Voluntary Petition under Chapter 11 of Title 11 of the United States Bankruptcy Code ("Code") was filed on July 26, 2011 (Filing Date").

2. This Court has jurisdiction to consider this motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this motion is a core proceeding pursuant to 28 U.S.C. §157(b). Venue of this case is proper in this district pursuant to 28 U.S.C. §§1408 and 1409.

3. Debtor is a Montgomery County, PA corporation specializing in commercial and residential mortgages that was founded by Jack Miller in 1989.. Gelt Financial does business in Pennsylvania, New Jersey, Delaware and Maryland. Since its inception, Gelt's philosophy has been to educate, satisfy and service its customer base. The Gelt Difference is to exceed its clients' expectations by offering speed, flexibility and customization.

4. As an industry leader, Gelt has always sought out new ways of making loans to quality borrowers who are traditionally underserved by the mortgage industry. Consequently, in 1999, when Gelt realized that the small commercial borrower was neglected by the mortgage industry, Gelt switched its focus to commercial lending from residential lending. Since then, Gelt has successfully proven that it can provide "make sense" loans to borrowers who would have had a difficult time finding traditional financing.

5. Specifically, in the ordinary course of the Debtor's business, it borrows money from traditional lenders and makes hard money loans to commercial borrowers. Also, as part of its business, the Debtor acquires and manages real estate in the real estate owned [REO] context, makes protective advances related to the ownership of said real estate or its mortgage collateral as well as funds the maintenance, upkeep and preservation of said assets.

6. The Debtor is a party to various loan agreements with traditional lenders requiring certain levels of protection and collateralization. Certain of the traditional lenders, as identified *infra*, operate with the Debtor on a warehouse basis.

7. The following lenders have advanced the following sums to the Debtor:

a. On November 29, 2006, Beneficial Mutual Savings Bank, a Pennsylvania Stock bank with offices at 630 Walnut Street, Philadelphia, Pennsylvania, 19106 made a loan to the Debtor in the original principal amount of $3,000,000 which has been subject to various modifications since the inception of the loan (the "Beneficial Loan"). The Beneficial Loan is secured with a first lien security interest in (i) each Eligible Mortgage Loan, as defined in the Loan and Security Agreement; (ii) the proceeds from the sale of such mortgage loans; and (iii) all deposit accounts of the Debtor maintained at Beneficial Mutual Savings Bank.

b. On July 23, 2007, Bucks County Bank, a Pennsylvania banking corporation with offices at 200 South Main Street, Doylestown, Pennsylvania, 18901 made a loan to the Debtor in the original principal amount of $1,500,000 which has been subject to various amendments and modifications since the inception of the loan (the "Bucks County Loan"). Specifically, in March 2011, Bucks County Bank and the Debtor entered into that certain Amendment to Note Agreement reflecting an amended principal amount due of $1,354,893.98. The Bucks County Loan is secured by an assignment of specific notes and mortgages from Gelt Business Credit, LLC, as defined in the underlying Bucks County Bank Security Agreement.

c. On November 29, 2006, Fox Chase Bank, with offices located at 4390 Davisville Road, Hatboro, Pennsylvania, 19040 made a loan to the Debtor establishing a line of credit in the aggregate amount of $3,000,000 (the "Fox Chase Loan") which is evidenced by a Demand Promissory Note of even date in the original principal amount of $2,500,000 (as amended, supplemented and modified, "Note A") and a Demand Promissory Note of even date in the original principal amount of $500,000 (as amended, supplemented and modified, "Note B," together with Note A, the "Notes"). As security for the payment of the principal of the Line of Credit and all interest thereon, and for the payment, performance and discharge of all other indebtedness and Obligations or undertakings now or hereafter owing or made by the Debtor to or for the benefit of Fox Chase under Fox Chase Loan documents, the Demand Promissory Notes, the Collateral Assignment of Mortgage Note and Other Loan Documents or under any other agreement, promissory note or undertakings now or hereinafter existing or entered between the Debtor and the Fox Chase Bank, the Debtor granted Fox Chase (a) continuing first priority security interest in and lien upon the Collateral, as defined in the underlying loan documents and (b) A security interest in and lien upon all funds or other assets of the Debtor now or at any time hereafter on deposit with or in the possession of Fox Chase Bank or

owing by Fox Chase Bank to the Debtor, (being sometimes referred to as "Additional Collateral").

d. On January 31, 2006, Harleysville National Bank and Trust Company extended a credit facility to Gelt Business Credit, LLC, a successor by merger with the Debtor, with a maximum credit line amount of $6,000,000 (the "VCF Loan"). Subsequently thereto, First Niagara Bank, N.A. became a successor by merger to Harleysville National Bank and Trust Company. On or about June 30, 2011, the Debtor's loan was sold by First Niagara Bank, N.A. to VCF Partners 6, LLC. The VCF Loan is secured by the Collateral, as defined in Section 5.3 of the original Harleysville National Bank and Trust Company Loan and Security Agreement.

e. On August 28, 2008, interState Net Bank, a New Jersey commercial bank located at 457 Haddonfield Road, Cherry Hill, New Jersey, 08002 extended to Gelt Business Credit, LLC, a successor by merger with the Debtor, a $2,500,000 loan secured by the Deposit Collateral, as defined in Section 6.4 of the interState Net Bank Loan Documents. Subsequently thereto, this loan was assigned by interState Net Bank to New Century Bank.

f. On December 12, 2006, National Penn Bank and the Debtor entered into a Revolving Mortgage Loan Agreement, as modified, supplemented and amended on numerous occasions subsequent

thereto, in the original principal amount of $3,500,000 (the "Nat Penn Loan.") The Nat Penn Loan is secured by the Collateral, as defined in Article III of the Master Demand Note under the Revolving Mortgage Loan Agreement.

g. On August 3, 2005, The Park Avenue Bank, a banking corporation organized and existing under the laws of the State of New York with offices located at 460 Park Avenue, New York, New York, entered into a Loan Agreement with the Debtor in the original principal amount of $1,000,000 (the "Park Avenue Loan"). The Park Avenue Loan is Secured by the Collateral, as defined in Section II(A) of the original Loan Agreement.

h. On or about March 25, 2005, Republic First Bank, with offices located at 1608 Walnut Street, Philadelphia, Pennsylvania, 19103, and the Debtor entered into a Loan and Security Agreement in the original principal amount of $3,000,000. Subsequently thereto, the March 25, 2005 Loan Agreement was modified to increase the original principal amount of the loan to $5,000,000 (the "First Republic First Loan"). On or about March 3, 2006, Republic First Bank and the Debtor entered into a Second Loan and Security Agreement in the original principal amount of $6,000,000 (the "Second Republic First Loan," collectively referred to herein as the "Republic First Loans"). The Republic First Loans are secured by the

Collateral, as defined in Section 1.3 of each Loan and Security Agreement.

i. On July 29, 2002, Univest National Bank and Trust Company, with offices located at 14 N. Main Street in Souderton, Pennsylvania, and the Debtor entered into a Loan Agreement in the original principal amount of $1,500,00, modified to increase the original principal amount to $2,500,000 on or about April 21, 2005 (the "First Univest Loan"). On January 15, 2008, Univest National Bank and Trust Company, with offices located at 14 N. Main Street in Souderton, Pennsylvania, and the Debtor entered into a Commercial Loan Agreement in the original principal amount of $5,000,000, as amended, supplemented and modified on various occasions subsequent thereto (the "Second Univest Loan," hereinafter collectively referred to with the First Univest Loan as the "Univest Loans").

j. On or about June 15, 2006, VIST, with offices located at Sentry Parkway West, Blue Bell, PA 19422, and the Debtor entered into a Loan and Security Agreement in the original principal amount of $6,000,000, as amended, modified and supplemented on numerous occasions subsequent thereto (the "VIST Loan"). The VIST Loan is secured by the Collateral as defined in Section 1.3 of the original Loan and Security Agreement.

8. With regard to those lenders and loans referenced in Paragraph 7, the Debtor, to the best of its knowledge, submits that the following amounts, as of June 30, 2011, are due and owing under the subject loan documents:

    a. Beneficial Mutual Savings Bank: $2,399,000

    b. Bucks County Bank: $1,355,000

    c. Fox Chase bank: $1,780,000

    d. VCF Partners 6, LLC: $241,000

    e. New Century Bank: $160,000

    f. National Penn Bank: $1,642,000

    g. The Park Avenue Bank: $319,000

    h. Republic First Bank: $488,000

    i. Univest National Bank and Trust Company: $4,487,000

    j. VIST: $2,605,000

9. The Debtor also owns real estate subject to mortgages with certain of the lenders referenced in Paragraph 7 which it must manage, maintain and sell. A schedule of the Debtor's Real Estate Holdings is attached hereto as Exhibit "A."

10. As a result of the extended economic downturn, the Debtor's clients have been unable to make payments and are in default of their obligations to the Debtor. Consequently, the Debtor was forced to restructure its own loans with its traditional lenders. Moreover, the Debtor has faced difficulty selling properties taken back from borrowers and/or clients and otherwise funding continued operations.

11.   In addition to the foregoing, the Debtor has a substantial amount of subordinated investor debt. A true and correct copy of the Debtor's Subordinated Debt Schedule is attached hereto as Exhibit "B."

12.   In anticipation of a disagreement regarding continued funding, the Debtor prepared a budget for the use of cash collateral, extending through August 31, 2011 (Exhibit "C"), which shows that, using proceeds of existing loans, the Debtor can fund operations. All such payments are reasonable and necessary to preserve and enhance the estate.

13.   The continued use of cash collateral and the rollover of proceeds will allow the Debtor to continue to generate further proceeds and pay all post-petition obligations.

14.   Attached hereto as Exhibit "C" is a budget regarding use of cash collateral, which includes all revenue and expenses.

15.   The Budget shows that the Debtor will generate $149,400 in proceeds in August 2011.

16.   The Debtor avers that adequate protection payments, protective advances to secure, maintain and insure certain of the collateral and the continued management of the Debtor's portfolio by the Debtor will serve to adequately protect the Debtor's lenders.

17.   The Debtor believes that the request to use cash collateral is proper, reasonable and necessary to continue the Debtor's operations.

18.   Approval of the Debtor's request to use cash collateral is in the best interest of the Debtor and creditors of the estate.

19. The Debtor proposes to provide adequate protection in the form of continued maintenance and preservation of the collateral and adequate protection payments to each of the lenders identified in Paragraph 7.

20. In order to maintain the Debtor's operation, Debtor requires the use of cash collateral for the payment of expenses as more specifically set forth in the budget. Through the payment of the above referenced expenses, Debtor will be able, not only to maintain the status quo, but also to facilitate its reorganization and enhance the collateral.

21. Unless the Debtor can continue to operate, it will be unable to reorganize and enhance the collateral, to the detriment of its creditors.

22. Section 361 of the Bankruptcy Code sets forth three means by which adequate protection may be provided: (i) periodic payments; (ii) additional or replacement liens; and (iii) such other relief as will result in the realization of the "indubitable equivalent" of the entity's interest. See 11 U.S.C. § 361. Section 361 clearly provides a non-exhaustive list of forms of adequate protection, and the courts considering adequate protection have considered it "a concept which is to be decided flexibly on the proverbial 'case-by-case' basis." In re O'Connor, 808 F.2d 1393 (10th Cir. 1987) (citing In re Martin, 761 F.2d 472 (8th Cir. 1985)); In re Swedeland Development Group, Inc., 16 F.3d 552 (3d Cir. 1994) (discussing the "last possibility [section 361(3)] is regarded as a catch all, allowing courts discretion in fashioning the protection provided to a secure party. Therefore, a determination of whether there is adequate protection is made on a case by case basis.")

23. The value of the lender's interest to be protected is the value of the interest on the date that the request for protection is made. In re O'Connor, 808 F.2d at 1397. In connection with the concept of adequate protection, a prepetition creditor is to be provided with the same level

of protection it enjoyed pre-petition since it is entitled to retain the benefit of its pre-bankruptcy bargain. In re Swedeland, 16 F.3d 552 (3d Cir. 1994). However, "[t]here may be situations in bankruptcy where giving a secured creditor an absolute right to his bargain may be impossible or seriously detrimental to the bankruptcy laws. Thus, this section recognizes the availability of alternate means of protecting a secured creditor's interest." In re Briggs Transportation Company, 780 F.2d 1339 (8th Cir. 1986) (citing to the legislative history of section 361). "It is expected that the courts will apply the concept in light of facts of each case and general equitable principles." Id.

24. Here the Debtor is providing adequate protection in the form of adequate protection payments, protective advances to secure, maintain and insure certain of the collateral and the continued management of the Debtor's portfolio by the Debtor.

25. As set forth above, the examples of adequate protection set forth in section 361 of the Bankruptcy Code are not an exhaustive list. See supra. In the case In re Hinchcliffe, 164 B.R. 45 (Bankr. E.D. Pa. 1994), in examining the concept of adequate protection in connection with a motion for relief from stay, the District Court discussed the various forms of adequate protection that a debtor can provide, including an equity cushion, cash payments of interest, or additional replacement liens. The District goes on to state that "while the list of adequate protection examples is not exhaustive, in the proper case, a debtor could rely upon his arguably high prospects for a successful reorganization to support his claim that protection exists." Id. at 49 (citing In re Roane, 14 B.R. 542, 544-46 (E.D. Pa. 1981)). The Debtor posits that the prospects for reorganization are high, thus demonstrating an additional form of adequate protection to the lenders.

26. In this case there will be no post-petition diminution in value of the lenders' collateral. In fact, quite the opposite will occur.

## **REQUEST FOR EXPEDITED CONSIDERATION**

27.     The Debtor projects revenue of $149,400 in August. The Debtor employs approximately nine (9) employees exclusive of management. The Debtor's estimated payroll, to be funded on August 5, 2011 and again on August 19, 2011, is $34,053.14 inclusive of management.

28.     Given the amount of Lenders involved, mortgages and loans affected and well-publicized litigation with certain of the Lenders referenced in Paragraph 7 as well as the upcoming payroll schedule of the Debtor, the Debtor submits it is in the best interest of all interested parties as well as the estate to have a hearing on the Debtor's Motion as quickly as the Court's calendar permits but in all cases on or before July 28, 2011.

29.     As of the filing of this motion, no trustee, examiner or creditor's committee has been appointed in these Chapter 11 cases. Notice of this motion will be been given via facsimile, electronic mail and/or regular mail, or to the United States Trustee, the Top 20 Unsecured Creditors and the Debtor's Secured Creditors upon Debtor's receipt of the signed Order scheduling the requested expedited hearing. The Debtor submits that no other notice need be given in light of the exigencies of the circumstances and the irreparable harm to the Debtor, its estates and all parties in interest that would ensue if the relief requested herein is not granted.

30.     No previous request for the relief sought herein has been made to this or any other Court. Prior to filing this Motion, counsel for the Debtor contacted known counsel for the lenders and the U.S. Trustee to advise of the Debtor's request for the scheduling of an expedited hearing within ten (10) days, subject to their respective rights to contest the relief sought therein.

**WHEREFORE**, the Debtor requests that this Court enters an Order in the form attached hereto and for such other and further relief as this Court deems just.

          Respectfully submitted,

          CIARDI CIARDI & ASTIN

Date:  July 27, 2011      By:   */s/ Albert A. Ciardi, III*
          Albert A. Ciardi, III, Esquire
          Thomas D. Bielli, Esquires
          Jennifer E. Cranston, Esquire
          One Commerce Square, Suite 1930
          2005 Market Street
          Philadelphia, PA 19103

          Proposed Attorneys for the Debtor